[Cite as *Gustafson v. Ohio State Univ.*, 2026-Ohio-2792.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deborah Gustafson et al., | : | |
| Plaintiffs-Appellants, | : | No. 25AP-936 |
| | | (Ct. of Cl. No. 2024-00672JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 21, 2026

**On brief:** *Thomas Law Offices, PLLC*, and *Alexander K. Ernst*, for appellants. **Argued:** *Alexander K. Ernst.*

**On brief:** [*Andy Wilson*], Attorney General, *Lauren D. Emery* and *Maggie Shaver*, for appellee. **Argued:** *Lauren D. Emery.*

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1} Plaintiffs-appellants, Deborah and Keith Gustafson, appeal from a judgment of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, The Ohio State University ("OSU"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On September 9, 2024, appellants filed a complaint against OSU asserting claims for negligence, negligence per se, and loss of consortium. (Compl. at 3-4.) According to their complaint, appellants, who reside in Iowa, traveled to Columbus on October 22, 2022 to attend a football game between OSU and the University of Iowa. (Deborah Depo. at 21; Compl. at 2.) After leaving the game, they were walking on a sidewalk

owned and maintained by OSU when Deborah fell to the ground and was injured. (Compl. at ¶ 6-9.) Appellants alleged the sidewalk "was in disrepair and dangerous" and caused Deborah to fall. (Compl. at ¶ 7, 9.) Appellants sought compensatory and punitive damages. (Compl. at 4.)

{¶ 3} On August 5, 2025, OSU filed a motion for summary judgment. OSU argued there were no genuine issues of material fact regarding whether the variance in the sidewalk was a dangerous condition under the "two-inch rule" and whether the sidewalk was an open and obvious condition such that OSU owed no duty to protect Deborah. OSU additionally argued Keith's loss of consortium claim necessarily failed because it was derivative of the other claims. In support of its motion, OSU relied on Deborah's deposition testimony claiming October 22, 2022 was a warm, sunny day, her view of the sidewalk was not obstructed as she walked back to her car, and, had she looked, she would have seen the "lip" in the sidewalk. (Deborah Depo. at 26, 28, 31, 77.) OSU pointed to Deborah's deposition testimony that the sidewalk variance was one and one-half inches in height and argued an elevation difference of less than two inches is insubstantial as a matter of law. (Mot. for Summ. Jgmt. at 5-6.) Though Deborah testified "there w[ere] people around" while she walked back to her car, she also stated she was able to see the ground as she walked. (Deborah Depo. at 26.) Thus, OSU asserted Deborah did not introduce evidence of attendant circumstances to rebut a presumption that the condition was not unreasonably dangerous or that it was not open and obvious.

{¶ 4} Appellants filed a memorandum contra OSU's motion for summary judgment arguing there remained genuine issues of material fact as to whether the condition was open and obvious or unreasonably dangerous and whether attendant circumstances existed. (Memo Contra at 4-6.) Appellants argued summary judgment was inappropriate on their claim of negligence per se as they had introduced sufficient evidence to create an issue of fact as to whether the condition of the sidewalk violated Columbus Cod.Ord. 905.11. (Memo Contra at 6.) OSU responded that Columbus Cod.Ord. 905.11's requirement that a property owner maintain sidewalks in a certain condition does not impose a duty on property owners to the public at large and, thus, cannot support appellants' claim of negligence per se. (Reply in Support of Mot. for Summ. Jgmt. at 5-6.)

{¶ 5} In an October 29, 2025 entry, the Court of Claims granted OSU's motion for summary judgment. (Oct. 29, 2025 Entry.) The court determined OSU did not owe Deborah a duty of care because the condition of the sidewalk was open and obvious and appellants did not demonstrate a genuine issue of fact as to the existence of attendant circumstances that would preclude application of the open and obvious doctrine. (Oct. 29, 2025 Entry at 5-6.) Additionally, the court found that because the variance in the sidewalk was less than two inches in height, it was not a substantial defect as a matter of law and, for the same reasons applicable to its analysis of the open and obvious doctrine, appellants failed to present evidence of attendant circumstances giving rise to an exception to the "two-inch rule." (Oct. 29, 2025 Entry at 7.) The court also concluded the negligence per se claim failed because Columbus Cod.Ord. 905.06 and 905.11 do not impose a duty on property owners to protect business invitees from sidewalk defects of one-half inch or greater. (Oct. 29, 2025 Entry at 8.) Having determined both the common law negligence and negligence per se claims fail, the Court of Claims concluded the derivative claim of loss of consortium also fails. (Oct. 29, 2025 Entry at 8.) Finding no genuine issues of material fact remained, the Court of Claims entered judgment in favor of OSU. (Oct. 29, 2025 Entry at 8.) Appellants timely appeal. (Nov. 24, 2025 Notice of Appeal.)

## II. Assignment of Error

{¶ 6} Appellants raise the following sole assignment of error for our review:

> The trial court erred when it granted summary judgment in favor of appellee, as it failed to construe the facts in favor of appellants.

## III. Standard of Review

{¶ 7} An appellate court reviews a trial court's grant of summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is

adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 8} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the summary judgment motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating the non-moving party has no evidence to support the non-moving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Dresher* at 293. Where the moving party satisfies the initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise, as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.); Civ.R. 56(E).

## IV. Analysis

{¶ 9} In their sole assignment of error, appellants argue the trial court erred in granting OSU's motion for summary judgment on their claims of common law negligence, negligence per se, and loss of consortium. More specifically, appellants assert the trial court failed to construe the evidence in their favor.

### A. Common Law Negligence

{¶ 10} We first address appellants' claim of common law negligence related to Deborah's trip and fall. To establish negligence, a plaintiff must prove (1) the existence of a duty; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *See, e.g.*, *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 32 (10th Dist.); *Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 10 (10th Dist.). Where a plaintiff fails to present evidence establishing any one of these elements, the defendant is entitled to judgment. *Id.* The Court of Claims determined appellants failed to submit evidence showing OSU owed a duty to protect Deborah from the hazard that caused her to trip and fall. We agree.

{¶ 11} The existence of a duty is a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). Under Ohio tort law, a duty is " 'the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.' " *Wallace v. Ohio Dept. of Commerce*, 2002-Ohio-4210, ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989). In a matter involving premises liability, the injured party's status as an invitee, licensee, or trespasser defines the scope of the legal duty the owner or occupier of the premises owes to the entrant. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). Under common law, an owner or occupier of a premises owes an invitee a duty of ordinary care to maintain the premises in a reasonably safe condition so as not to unnecessarily and unreasonably expose the invitee to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, the owner or occupier of the premises is not an insurer of an invitee's safety against all accidents that may occur on the premises. *Simms v. Penn Natl. Gaming, Inc.*, 2022-Ohio-388, ¶ 21 (10th Dist.), citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 2014-Ohio-3935, ¶ 9 (10th Dist.).

{¶ 12} The Court of Claims determined appellants failed to show OSU owed a duty to protect Deborah from the defect in the sidewalk both because the defect was an open and obvious condition and because the defect was insubstantial as a matter of law under the two-inch rule. Because it is dispositive of appellants' common law negligence claim, we address only whether the defect in the sidewalk was insubstantial as a matter of law under the two-inch rule. *Brust v. Franklin Cty. Sheriff's Office*, 2017-Ohio-9128, ¶ 25 (10th Dist.) (where one argument under an assignment of error is dispositive, the remaining arguments raised under the same assignment of error are moot and the appellate court need not address them); *Carnes v. Siferd*, 2011-Ohio-4467, ¶ 31 (3d Dist.) (both the open and obvious doctrine and the two-inch rule relieve a landowner of a duty to warn of certain hazards, and "[w]here there are no issues of material fact with regard to the applicability of the open and obvious doctrine but issues of material fact with regard to the two-inch rule, or vice versa, there is no need to consider the other" because the granting of summary judgment based on application of one doctrine renders any consideration of the other doctrine moot).

{¶ 13} "As a general rule, landowners are not liable for minor defects in sidewalks and other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways." *Waldron v. Edinger*, 2022-Ohio-4296, ¶ 14 (10th Dist.), citing *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 9 (10th Dist.). Ohio recognizes a "two-inch rule" related to a difference in elevation in a sidewalk or walkway. *Harrigill v. Thompson Concrete, Ltd.*, 2017-Ohio-9201, ¶ 11-12 (10th Dist.), citing *Kimball v. Cincinnati*, 160 Ohio St. 370 (1953); *Humphries v. C.B. Richard Ellis, Inc.*, 2005-Ohio-6105, ¶ 11-12 (10th Dist.) (explaining the two-inch rule applies to public sidewalks and walkways as well as privately owned premises). Under the two-inch rule, "there is a rebuttable presumption that a defect [in a sidewalk or walkway] of less than two inches in height is insubstantial as a matter of law and does not give rise to liability." *Waldron* at ¶ 15, citing *Harrigill* at ¶ 11, citing *Cash v. Cincinnati*, 66 Ohio St.2d 319 (1981). An injured party may rebut the presumption by showing the existence of attendant circumstances that would render the defect substantial. *Harrigill* at ¶ 12; *Waldron* at ¶ 15, citing *Humphries* at ¶ 18, quoting *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33 (2d Dist. 1994).

{¶ 14} Here, the evidence was undisputed that Deborah tripped on the "lip" of a sidewalk owned by OSU while returning to her vehicle after attending a football game at Ohio Stadium on OSU's campus. (Deborah Depo. at 29.) The sidewalk is located near the intersection of Neil Drive and Neil Avenue, approximately one-third of a mile from Ohio Stadium.[1] (Deborah Depo. at 26.) It is also undisputed that the defect in the sidewalk where Deborah fell had a height differential of less than two inches, with Deborah estimating that the height was one and one-half inches during her deposition. (Deborah Depo. at 32.) Given these undisputed facts, in the absence of attendant circumstances, appellants' common law negligence claim fails, and OSU is entitled to summary judgment as a matter of law. *Harrigill* at ¶ 13; *Blain v. Cigna Corp.*, 2003-Ohio-4022, ¶ 9 (10th Dist.). The inquiry then becomes whether appellants demonstrated a genuine issue of material fact regarding the existence of attendant circumstances.

---

[1] Though the calculated distance is not part of the Civ.R. 56 evidentiary materials contained in the record, OSU noted the distance between the stadium and the sidewalk intersection during oral argument.

{¶ 15} "An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party." *Cummin v. Image Mart, Inc.*, 2004-Ohio-2840, ¶ 8 (10th Dist.). "In order for an attendant circumstance to elevate a minor defect into a substantial defect, the circumstance must be significant enough to divert the attention of the individual and significantly enhance the danger of the hazard and, thus, contribute to the fall." *Harrigill* at ¶ 14, citing *Blain* at ¶ 10; *Jenkins*, 2013-Ohio-5106, at ¶ 16 (10th Dist.). "The attendant circumstance must be so abnormal that it would unreasonably increase the normal risk of harm or reduce the degree of care an ordinary person would exercise." *Id.*, citing *Blain* at ¶ 10. Taken together, attendant circumstances "must divert the pedestrian's attention, significantly enhance the danger of the hazard, and contribute to the fall." *Id.*, citing *Blain* at ¶ 10; *Jenkins* at ¶ 16.

{¶ 16} Though this court has not precisely defined attendant circumstances, we have recognized " '[a]ttendant circumstances are factors that contribute to a fall and are beyond the injured party's control.' " *Jacobs v. Great Southern Shopping Ctr., L.L.C.*, 2024-Ohio-1180, ¶ 16 (10th Dist.), quoting *Simms*, 2022-Ohio-388, at ¶ 30 (10th Dist.). Examples of attendant circumstances include, but are not limited to, " 'poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would easily be distracted.' " *Simms* at ¶ 30, quoting *Jenkins* at ¶ 16, citing *Humphries*, 2005-Ohio-6105, at ¶ 20 (10th Dist.).

{¶ 17} Appellants argue there remains a genuine issue of material fact as to whether attendant circumstances existed when Deborah fell. They assert "[a]nyone who has ever attended a Buckeyes game knows that fans flock in masses to attend," and it "simply is not possible for a person leaving Ohio Stadium . . . with the game crowd to stare at the ground while walking." (Appellants' Brief at 10.) In other words, appellants suggest we should assume attendant circumstances existed based on the nature of the event appellants had just departed. We are mindful, however, of the fact-specific nature of trip and fall cases. *See, e.g., Copp v. Honda*, 2025-Ohio-4558, ¶ 25 (10th Dist.) (the amount of "attention a reasonable person should direct to his or her surroundings under the circumstances is an extremely fact-specific analysis"); *Kraczek v. Univ. of Cincinnati*, 2025-Ohio-2607, ¶ 34 (10th Dist.) (determining whether a dangerous condition exists "requires a review of the

facts on a case-by-case basis"). Additionally, Civ.R. 56(E) requires the non-moving party to set forth specific facts based on personal knowledge, not merely speculation or generality, showing a genuine issue exists for trial. *Woods v. Capital Univ.*, 2009-Ohio-5672, ¶ 40 (10th Dist.), citing *McKenzie v. FSF Beacon Hill Assocs., L.L.C.*, 2006-Ohio-6894, ¶ 16 (10th Dist.) ("Mere speculation does not create a material issue of fact."); *Carroll v. Alliant Techsystems, Inc.*, 2006-Ohio-5521, ¶ 17 (10th Dist.) ("Speculation and conjecture . . . are not sufficient to overcome appellant's burden of offering specific facts showing that there is a genuine issue for trial."). Thus, to survive OSU's motion for summary judgment, appellants had to point to specific facts in this record demonstrating a genuine issue that the number of pedestrians at the time and location of Deborah's fall constituted an attendant circumstance.

{¶ 18} Though a large volume of pedestrian traffic may contribute to a finding of attendant circumstances, " 'normal traffic' of people coming in and out of an establishment is not a circumstance so significant or unusual as to rise to the level of attendant circumstances.' " *Simms* at ¶ 32, citing *Kraft v. Johnny Biggs Mansfield, L.L.C.*, 2012-Ohio-5502, ¶ 26 (5th Dist.). Deborah testified that, as they were walking back to their car, "[t]here w[ere] people around us, so it's like sharing the sidewalk." (Deborah Depo. at 29.) Appellants assert we should infer from this statement that Deborah was distracted and, thus, reduced the degree of care she would ordinarily exercise while walking. Appellants ignore, however, that Deborah repeatedly testified she was not distracted and was able to view the sidewalk while walking. Specifically, the following exchange occurred during Deborah's deposition:

> Q. So let's talk about the area where you ultimately have your fall. Tell me what it was like in terms of crowds. Was it a crowded area, were there many people around, what do you remember about that?
>
> A. There w[ere] people around. Everyone was leaving the stadium and I'm assuming walking back to their vehicles.
>
> Q. Were you able to see the ground as you walked? So I'm talking about, like, were you packed in super tight to people or was there enough space to see where you were walking?

A. ***There was enough space to see the ground***. There
w[ere] people all around us, but...

Q. Were there ***any distractions*** in that area where you were
- - where you ultimately had your fall, anything that was
distracting you from being able to see where you were going?

A. No. Just walking down the sidewalk.

(Emphasis added.) (Deborah Depo. at 26.) Deborah then reiterated she was not distracted
when she fell in another exchange:

Q. All right. Well, as you approached the area where you
ultimately fell, I think we just talked about this, there was not -
- I want to make sure I'm not putting words in your mouth. As
you approached the area where you ultimately fell, ***were you
distracted by anything*** going on in that area?

A. No.

(Emphasis added.) (Deborah Depo. at 28.) In describing the volume of pedestrian traffic,
Deborah stated "[t]here w[ere] a lot of people around us, in front of us. ***It looked like
just a normal sidewalk***." (Emphasis added.) (Deborah Depo. at 79.) Deborah
admitted she was not looking at the ground when she fell. (Deborah Depo. at 29-30, 77.)
Instead, she testified she was looking ahead, "[k]ind of following [her] husband down the
sidewalk, getting back to [their] parking garage." (Deborah Depo. at 31.) She repeatedly
agreed she would have been able to see the lip in the sidewalk had she looked down.
(Deborah Depo. at 33, 77.) By Deborah's own admissions in her deposition testimony, the
volume of pedestrian traffic was not unusual and she was not distracted by other
pedestrians when she fell. Where a plaintiff specifically testifies she was not distracted by
other pedestrians and they did not impede her view of the sidewalk, the mere presence of
other pedestrians does not create a genuine issue of material fact as to the existence of
attendant circumstances. *Simms* at ¶ 32 (finding "no genuine issue of material fact as to
whether the other pedestrians on the sidewalk diverted [appellant's] attention, significantly
enhanced the danger posed by the uneven sidewalk, and contributed to the fall" because
"appellant testified that he did not believe that other pedestrians on the sidewalk obstructed

his view of the uneven sidewalk, and he did not testify that the pedestrians distracted him in any way").

{¶ 19} Appellants suggest that despite Deborah's admission that there was nothing distracting her when she fell, Keith's testimony was sufficient to create a genuine issue of material fact on the question of attendant circumstances.  Keith testified:

> And, you know, we were - - we were not walking fast.  We were taking - - we were watching what way we were walking. You know, you look down, you look up, you don't totally stare down at your feet, then you run into a stop sign or something. You've got to kind of, you know, like when you're driving, have your head on a swivel, and that's how we were walking.
>
> But other than that, that's why I sent in those pictures just to show how it was a normal sidewalk, and if you looked at it ahead where we were - - because there's people coming, you just can't look down at your feet, you can't just keep looking ahead, there's people coming left, right, in front of us, behind us. And so you just had to keep your head on a swivel. And that's why I showed those two differences in the sidewalk and how the other one just appeared and that's what caused her to fall and to break her ankle.

(Keith Depo. at 37-38.)  But it is not enough for a distracting condition to be present; to render a defect substantial, the attendant circumstances must actually contribute to the fall. *Blain*, 2003-Ohio-4022, at ¶ 10 (10th Dist.), quoting *Stockhauser*, 97 Ohio App.3d at 33; *Humphries*, 2005-Ohio-6105, at ¶ 22 (10th Dist.) (appellant's knowledge of police and media presence in the building did not constitute an attendant circumstance because his knowledge of the crisis response did not contribute to his fall); *Simms*, 2022-Ohio-388, at ¶ 30 (10th Dist.) (Emphasis added.) ("Attendant circumstances are factors that ***contribute to a fall*** and are beyond the injured party's control.").  Keith described his own perception of the volume of pedestrians and his reaction to the number of people in the area.  However, Deborah testified repeatedly and unequivocally that she was not distracted when she fell and could have seen the defect in the sidewalk had she looked.  In other words, Deborah's deposition testimony established the volume of pedestrian traffic did not contribute to her fall.  Even construing Keith's testimony in a light most favorable to appellants, it does not create a genuine issue of material fact as to whether the volume of

pedestrian traffic constituted an attendant circumstance that actually distracted Deborah or diverted her attention such that the attendant circumstance contributed to her fall. *See Simms* at ¶ 32 (appellant testified the other pedestrians did not obstruct his view of the sidewalk and he did not testify to being distracted by pedestrians, so appellant could not demonstrate a "genuine issue of material fact as to whether the other pedestrians on the sidewalk diverted his attention, significantly enhanced the danger posed by the uneven sidewalk, and contributed to the fall"); *Humphries* at ¶ 19-20 (attendant circumstances, including a "large volume of pedestrian traffic," must "divert the attention of the pedestrian, significantly enhance the danger of the defect and contribute to the fall"); *Harrigill*, 2017-Ohio-9201, at ¶ 15 (10th Dist.) (where plaintiff, herself, testified that nothing distracted her before she tripped, no reasonable jury could conclude there were attendant circumstances present that would render the plywood board bridging a height differential between the street and sidewalk a substantial defect). *See also Ward v. SKH Group, L.L.C.*, 2023-Ohio-4161, ¶ 26 (5th Dist.), quoting *Forste v. Oakview Constr., Inc.*, 2009-Ohio-5516, ¶ 22 (12th Dist.) (for the attendant circumstances exception to apply, the circumstance " 'must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury' "); *Ianetta v. Joyce Passov Commercial Property Mgt., L.L.C.*, 2021-Ohio-4520, ¶ 32-33 (8th Dist.) (expert opinion that a customer's attention would be diverted in similar circumstances based on the motor vehicle traffic present did not create a genuine issue of material fact regarding attendant circumstances where the injured party did not testify his attention was distracted or diverted). Whether Keith found the pedestrian traffic distracting is not a material fact for purposes of determining whether the other pedestrians actually distracted Deborah or contributed to her fall. *Plough v. Nationwide Children's Hosp.*, 2024-Ohio-5620, ¶ 30 (10th Dist.) (a "material" fact is one that could affect the outcome of the case under the applicable substantive law.).

{¶ 20} Though appellants introduced evidence that Deborah's fall happened to occur after they and other attendees left a football game on OSU's campus, they did not introduce any evidence tending to suggest the volume of pedestrians present at the time and location of Deborah's fall diverted Deborah's attention or otherwise contributed to her fall. Without such evidence, appellants do not demonstrate a genuine issue of fact remains that attendant circumstances rendered the defect in the sidewalk substantial. Accordingly,

the Court of Claims did not err in concluding the two-inch rule applied and granting OSU's motion for summary judgment on appellants' common law negligence claim.

### B. Negligence Per Se

{¶ 21} Appellants additionally asserted a claim of negligence per se. While the two-inch rule articulated above is based on the common-law duty a premises owner owes to invitees, negligence per se concerns violation of a statutory duty. *See Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, ¶ 14, citing *Robinson v. Bates*, 2006-Ohio-6362, ¶ 23 (noting negligence per se is not the same as liability per se as the plaintiff must still prove proximate cause and resulting damages). "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." *Id.* at ¶ 15, citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565-66 (1998). Negligence per se does not arise from every legislative enactment. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496 (2000). "Where a statute imposes a specific duty for the safety of others, failure to perform that duty is negligence per se." *Koeppen v. Columbus*, 2015-Ohio-4463, ¶ 26 (10th Dist.), citing *Chambers* at 565. However, "[w]here a statute contains only a general, abstract description of a duty, 'a plaintiff proving that a defendant violated the statute must nevertheless prove each of the elements of negligence in order to prevail.' " *Id.*, quoting *Sikora* at 496. *See also Eisenhuth v. Moneyhon*, 161 Ohio St. 367 (1954), paragraph two of the syllabus ("Where a legislative enactment imposes upon any person a specific duty for the protection of others, and his neglect to perform that duty proximately results in injury to such another, he is negligent per se.").

{¶ 22} Appellants allege Columbus Cod.Ord. 905.06 and 905.11 created a statutory duty for OSU to protect Deborah from the condition of the sidewalk and there remain genuine issues of material fact as to whether OSU failed to comply with those legislative enactments. Section 905.06 provides:

> The abutting private property owner shall be responsible for the proper maintenance and repair of all sidewalks and driveway entrances within the abutting right-of-way or easement for any improved or unimproved street, alley, or other public way within the city, which provides access around, in, or to said private property.

Columbus Cod.Ord. 905.06(a). Section 905.11 then sets forth the specific sidewalk conditions requiring repair, stating:

> (a) No abutting property owner shall allow the condition of the sidewalk, and/or driveway approach within the public right-of-way or easement to deteriorate beyond the criteria herein established. Criteria for ordering the replacement or repair of sidewalks, shared-use paths, or driveway approaches shall be any or all of the conditions described as follows:
>
> Offset of one-half (1/2) inch or greater;
>
> Crack which has a gap of greater than one-half (1/2) inch;
>
> An area where there exists a difference in elevation of material of one-half (1/2) inch or greater;
>
> Excessive deterioration, spalling or exposed gravel of one-half (1/2) inch or greater in depth;
>
> Excessive slope caused by a shifting of the sidewalk, shared-use path or driveway approach.
>
> (b) . . . Where offsets, elevation differences, deterioration, and/or spalling exceeds one and one-half (1.5) inches in depth within a sidewalk, shared-use path or driveway approach, and/or where excessive sidewalk or shared-use path cross slope is equal to or greater than ten (10) percent, these conditions shall be considered just cause for emergency barricade and/or repair by the Director, as outlined within Section 908.05, Emergencies.

Because they introduced evidence that the sidewalk at issue had a height variation of one and one-half inches, appellants argue OSU violated Columbus Cod.Ord. 905.11 and, thus, they established negligence per se.

{¶ 23} We note it is not clear from this record whether the property containing the sidewalk is subject to the cited portions of the Columbus Municipal Code as appellants have asserted both the sidewalk and the streets are owned and controlled by OSU, not the City of Columbus. Even assuming arguendo this portion of OSU's property is subject to Columbus Cod.Ord. 905.06 and 905.11, we agree with the Court of Claims that appellants cannot show these legislative enactments create a duty to establish their negligence per se

claim. As the court explained, this court has already determined these specific ordinances—Columbus Cod.Ord. 905.06 and 905.11—do not establish a duty to pedestrians on a sidewalk. In *Jacobs*, 2024-Ohio-1180 (10th Dist.), based on our previous decision in *Miller v. Cruickshank*, 2007-Ohio-3055 (10th Dist.), we explained "[a] city ordinance that simply requires abutting property owners to maintain and repair sidewalks in accordance with certain standards and criteria does not impose a duty on those owners to pedestrians, but an obligation to assist the city in that maintenance and repair." *Id.* at ¶ 22, citing *Miller* at ¶ 13. Because we specifically determined Columbus Cod.Ord. 905.06 and 905.11 are "city ordinances requiring [the abutting property owner] to maintain and repair sidewalks in accordance with specific maintenance criteria," we held evidence of a violation of these municipal code provisions, "without more," could not establish a duty to pedestrians as to a sidewalk hazard. *Jacobs* at ¶ 23, citing *Miller* at ¶ 13.

{¶ 24} Appellants acknowledge our prior decision in *Jacobs* but argue it is factually distinguishable from the instant matter and, thus, does not apply. Appellants note the defendant in *Jacobs* was a property owner "whose property abutted a public sidewalk on a city road," while, here, "the sidewalk where Appellant Deborah Gustafson fell was solely within the control and jurisdiction" of OSU. (Appellants' Brief at 15-16.) While this factual distinction may be meaningful to the question of whether OSU is even subject to Columbus Cod.Ord. 905.06 and 905.11, it is not a meaningful distinction related to the underlying fundamental question of whether these legislative enactments create a statutory duty for purposes of negligence per se. *See Miller* at ¶ 13 ("the failure of an abutting property owner to maintain a sidewalk in good repair in compliance with an ordinance, without more, does not give rise to a right of action on the part of a pedestrian who is injured by reason of such defect"), citing *Lopatkovich v. Tiffin*, 28 Ohio St.3d 204, 207 (1986) ("[T]he rationale behind sidewalk snow removal statutes like the one sub judice is that it would be impossible for a city to clear snow and ice from all its sidewalks; and the duty imposed by such statutes is most likely a duty to assist the city in its responsibility to remove snow and ice from public sidewalks. This, however, does not raise a duty on owners and occupiers to the public at large, and such statutes should not, as a matter of public policy, be used to impose potential liability on owners and occupiers who have abutting public sidewalks."), citing *Eichorn v. Lustig's, Inc.*, 161 Ohio St. 11 (1954), syllabus ("An owner of property abutting on a public

street is not liable for injuries to pedestrians resulting from defects in the abutting portion of such street unless such defects are created or negligently maintained or permitted to exist by such owner for his own private use or benefit."). *See also Donnelly v. Berea*, 2020-Ohio-2722, ¶ 17 (8th Dist.) ("Ohio case law is clear that ordinances like this one do not impose a duty on property owners to the public at large, and a property owner's failure to comply with such an ordinance, without more, does not create a private right of action for pedestrians injured on public sidewalks."). Appellants do not articulate any basis to depart from this reasoning or from our specific holding in *Jacobs*. Thus, because we are bound by our prior decision in *Jacobs*, we must conclude the Court of Claims did not err in finding Columbus Cod.Ord. 905.06 and 905.11 do not impose on property owners a specific duty to pedestrians.

{¶ 25} Additionally, appellants argue an issue of fact remains as to whether OSU was on notice that its sidewalks failed to comply with the municipal ordinances. However, whether OSU had notice of a possible violation of Columbus Cod.Ord. 905.06 and 905.11 is irrelevant here because the sidewalk maintenance and repair ordinances at issue "do not impose liability on a property owner for damages sustained by third parties for the owner's failure to comply with the ordinances." *Jacobs* at ¶ 24 (explaining notice of a violation of a municipal ordinance may be pertinent to a finding of liability when, unlike here, the ordinance relied on specifically imposes liability on a property owner for injury to a third party resulting from the property owner's failure to comply with the ordinance). While notice may be a relevant consideration where a negligence per se claim is based on other municipal ordinances with different requirements, notice of a violation of these specific ordinances does not operate to create a legislative duty for purposes of negligence per se. *Id.*, citing *Miller* at ¶ 14-15 (even if there exists evidence that the municipality provided the property owners with notice of the violation, "the ordinance here contains no language conferring a private right of action for a violation of the ordinance"). Thus, even if OSU had received notice of a violation of these ordinances, such notice would not impact the fundamental determination of whether OSU owed a statutory duty to Deborah related to the defect in the sidewalk. *See Jacobs* at ¶ 24.

{¶ 26} Given our precedent in *Jacobs* and *Miller*, appellants are unable to demonstrate a genuine issue remains as to whether OSU owed Deborah a duty under their

claim of negligence per se. Accordingly, the Court of Claims did not err in granting OSU's motion for summary judgment on the claim of negligence per se.

### C. Loss of Consortium

{¶ 27} Finally, appellants asserted a claim for loss of consortium. A claim for "loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992). Keith's loss of consortium claim is derivative of Deborah's primary tort claims for negligence and negligence per se. Having determined the Court of Claims did not err in granting OSU's motion for summary judgment on Deborah's claims for negligence and negligence per se, such determination precludes Keith's loss of consortium claim. *Buck-Reed v. Sanford Plumbing, L.L.C.*, 2025-Ohio-5195, ¶ 36 (10th Dist.). Thus, the Court of Claims did not err in granting OSU's motion for summary judgment on the loss of consortium claim.

### D. Judgment in Favor of OSU

{¶ 28} For the reasons articulated above, the Court of Claims did not err in determining there remained no genuine issues of material fact related to appellants' claims for negligence, negligence per se, and loss of consortium. Therefore, OSU was entitled to judgment as a matter of law on all of appellants' claims, and the Court of Claims did not err in granting OSU's motion for summary judgment. Accordingly, we overrule appellants' sole assignment of error.

## V. Disposition

{¶ 29} Based on the foregoing reasons, the Court of Claims did not err in granting OSU's motion for summary judgment on appellants' claims for negligence, negligence per se, and loss of consortium. Having overruled appellants' sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

———————————